**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

PHILIP HOPKINS,

                Plaintiff,

vs.                                             Case No. 3:07-cv-147-J-32MCR

CITY OF JACKSONVILLE,

                Defendant.

_____

## ORDER

      Plaintiff Philip Hopkins, who is African-American, joined the City of Jacksonville Fire and Rescue Department in 1987 as a new firefighter.  At the time, the City was under a consent decree which required that for every white firefighter hired, a black firefighter would be hired as well.  Despite the obstacles, Hopkins rose up through the ranks to Captain and in the fall of 2003, he sat for and passed a promotion exam to become a District Chief. When the City did not promote him by November of 2005, he took action, filing a charge of racial discrimination and retaliation with the EEOC in May of 2006 and thereafter bringing this federal lawsuit in March of 2007.  Following discovery and motion practice, and at the Court's urging, the parties engaged in lengthy, albeit unsuccessful, mediation and settlement efforts facilitated by Judge Schlesinger.  Thus, following the renewal of the parties' earlier motion practice, the Court heard oral argument and now issues its decision on the City's motion for summary judgment.[1]

_____

    [1]The City's motion is Doc. 114, Hopkins' response is Doc. 120, the City's reply is Doc. 131. Exhibits are attached to these filings and are additionally of record at Docs. 115, 121-128.  The transcript of the summary judgment hearing is filed at Doc. 138.  Earlier record

There is no dispute that the City's fire department has a troubled history of racial discrimination.  The Court's increasingly restrictive consent decrees in the 1980's are evidence of the fire department's resistance to ending its discriminatory practices.  More recently, the Department of Justice, the NAACP, the EEOC, the black firefighters' union, and private parties have brought federal lawsuits challenging various aspects of the fire department's promotions and hiring practices as being racially discriminatory.  This case, however, is only about Captain Philip Hopkins, a respected career firefighter.  Captain Hopkins faced significant challenges to achieve his current position.  The Court has had the chance to hear him speak openly about the past and future of the fire department and has no reason to doubt the sincerity of his beliefs or that he has rendered valuable service to the City during his long career.[2]

Nonetheless, the task before this Court is to apply the law to the claims before it.  The Court finds the City is entitled to summary judgment on Counts I (Title VII race discrimination), II (Title VII retaliation), III (§ 1983 race discrimination) and IV (First Amendment retaliation) of the Second Amended Complaint (Doc. 22) but that its motion as

---

items also considered include Docs. 16, 56, 64-78, 84, 85, 88, 89, 90.  Although Hopkins objects to the City's new motion as being beyond the bounds of what the Court contemplated in permitting the parties to refile their papers, the Court did not limit the issues or arguments that could be raised and Hopkins was given a full opportunity to respond to the motion (the Court gave Hopkins nearly two months to respond to the motion and has permitted his extended length brief (42 pages) to remain of record, notwithstanding the violation of Local Rule 3.01(b)).  Hopkins did not object to the City's request for leave to file a reply (see Doc. 129) and Hopkins did not seek to file a sur-reply.

[2]Captain Hopkins' testimony occurred during an evidentiary hearing in another firefighter discrimination lawsuit.  Counsel for both parties in this case were present.  See Coffey v. Braddy, 3:71-cv-44-J-32PDB, Docs. 152 & 153 (transcripts).

to Count V (breach of contract) is due to be denied.  The Court's full decision follows.

## I.      Standard of Review

The City seeks summary judgment as to each of the five claims raised in Hopkins'

Second Amended Complaint.  To warrant the entry of summary judgment on any of these

counts, the Court must find there is "no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(a).  "An issue of fact

is 'material' if, under the applicable substantive law, it might affect the outcome of the case.

An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact

to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014)

(quotation and citation omitted).  Although "all justifiable inferences are to be drawn in [the

nonmovant's] favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), "the mere

existence of a scintilla of evidence in support of [that party's] position will be insufficient."

Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir.

2012) (quoting Anderson, 477 U.S. at 252).

## II.     Background

The issues here arise as the fallout from the settlement of an earlier federal lawsuit

Hopkins and others filed against the City, and the parties' efforts to extricate themselves from

a subsequent state court lawsuit filed against all of them by the Jacksonville Association of

Firefighters, Local 122 ("the Union").  Here is what happened:  In March 2000, Hopkins and

three other African-Americans who were or had been employed by the fire department filed

suit in federal court against the City alleging that the City's promotions system discriminated

against them based on race.  Both then and now, promotions within the fire department are

3

based on two factors:  passing scores on an examination and seniority points which are awarded for time with the department and time within the current position.  Generally speaking, a candidate's passing examination score and seniority points are added together, a list is created ranking the candidates based on those sums and, when a vacancy occurs, a promotion is awarded to the person at the top of the list.  The list is only valid for two years.

After two years (or earlier if the current list of eligible candidates is exhausted), if a vacancy occurs before a new examination is administered and a new list is created, provisional promotions are awarded based on seniority.  Persons provisionally promoted are returned to their previous positions as permanent promotions are made from the new list (unless of course a provisionally promoted person scored high enough on the examination to be at the top of the new list, in which case the promotion would become permanent).

The City's Civil Service Rules allow an exception to the promotions procedure for candidates who are returning from military service or who require accommodation based on a disability.  Those candidates are permitted to take a make-up examination and, if they pass the test, their scores will be coupled with their seniority points and their names will be inserted into the existing rank-ordered promotion eligibility list.[3]

---

[3]Hopkins' argument that the insertion of a returning veteran onto the existing list should restart the two-year clock is not supported by the law or City practice.  See Doc. 56-9, Attach. C (Civil Service Rule 4.03(2)(d)) (providing that a special examination shall be given to an employee whose military leave prevented participation in the scheduled examination); Doc. 56-9 (Declaration of Archie Cullen, City Human Resources Analyst-Principal) (explaining City's compliance with Civil Service Rule 4.03(2)(d)); Doc. 73 (Cullen Deposition) at Tr. 62-68 (explaining process and City practice).  See also, Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 et seq.; Williams v. Dept. of Air Force, 542 Fed. App'x 608 (Fed. Cir. 2013) (explaining that USERRA requires returning veterans be treated comparably with coworkers who remained continuously

In the earlier federal lawsuit (<u>Hopkins, et al. v. City of Jacksonville, et al.</u>, 3:00-cv-309-J-25) (<u>Hopkins I</u>), Hopkins and two of the other plaintiffs eventually reached a settlement with the City by which the City agreed to promote them without requiring them to take the promotion exam, and awarded them in-grade seniority points as though they had been promoted from the list.[4]  The Union then filed suit in state court against the City, Hopkins and the other two plaintiffs who had settled with the City, seeking to undo the settlement on

_____

employed).  The City's practice of adding returning veterans to the list without restarting the two-year clock complies with the law.  Moreover, Hopkins' suggested alternative of restarting the two-year clock each time a veteran returned could result in a list that never expired, thereby precluding any new non-military candidates from ever seeking a promotion.

[4]The Court has of course reviewed the record from <u>Hopkins I</u> and must clarify some of Hopkins' counsel's repeated misunderstandings about the procedural history of that case.  First, although the Union initially entered the case when its unopposed motion to intervene was granted, the Order  granting intervention was vacated because the plaintiffs, including Hopkins, filed an amended complaint naming the Union as a defendant.  Second, when the plaintiffs announced they had reached a settlement with the City and filed their motion for approval of the settlement, the Court conducted a hearing at which the Union vigorously argued against approval, contending that a fairness hearing was required and announcing that it would pursue its remedies in state court against the plaintiffs and the City if they went forward with their settlement agreement.  The Court denied the parties' motion to approve the settlement on the record at the hearing.  However, the plaintiffs and the City announced they were willing to forego judicial approval of their agreement and instead asked the Court to permit plaintiffs to simply voluntarily dismiss the City under Rule 41.  After questioning all parties (plaintiffs were originally represented by counsel, but they were all proceeding <u>pro se</u> at the time of their settlement with the City), the Court permitted that course and the City was dismissed from the case.  The Union and plaintiffs (who retained new counsel following their settlement with the City) continued to litigate plaintiffs' claims against the Union.  At trial, the Court granted the Union's motion for a directed verdict on all counts.  <u>See</u> <u>Hopkins v. City</u>, Case No. 3:00-cv-309-J-25, Docs. 11, 13, 14, 15, 19, 20, 43, 44, 49, 50, 54, 55, 56 (December 21, 2001 hearing transcript, also of record in this case as Doc. 16-3), 57, 80.  Plaintiff's various arguments that derive from a misconception about the record (including that the Union waived any right to pursue claims against Hopkins by failing to appeal the [non-existent] Order granting the motion for approval of the settlement) are unavailing and, frankly, reveal a disconcerting lack of attention to the record.

grounds that the promotions and awarding of seniority points violated the Union's Collective Bargaining Agreement with the City.[5]  See Doc. 64-16 (Union state court complaint).

When the Union filed a motion for summary judgment against the City and the other Hopkins I plaintiffs in the state court on December 31, 2002, Steve Rohan (who at the time was representing the City) and Reginald Luster (who represented Hopkins and the other two individual plaintiffs), met and discussed having the firefighters relinquish the in-grade seniority points awarded during their settlement with the City as a means of defeating summary judgment and protecting the promotions achieved through that settlement.  See Doc. 69 (Luster Declaration), Doc. 85-2 (January 30, 2003 Rohan affidavit filed in state court in opposition to summary judgment).   Luster sent Rohan a letter memorializing that conversation on January 14, 2003 which states, inter alia, "Please be advised that my clients, Willie Jones and Phillip [sic] Hopkins, have authorized me to advise you that they are in agreement to relinquish the seniority points awarded to them as part of the settlement with the City of Jacksonville in 2001."   Doc. 69 (Luster Declaration) at Ex. A.

Hopkins contends that he offered to relinquish the in-grade seniority points as part of settlement negotiations with the Union, although an affidavit signed by him on January 29, 2003 and filed by Luster in the state court proceeding says that the affidavit is submitted in opposition to the Union's motion for summary judgment.  Hopkins' affidavit states that his

---

[5]William Henry Harris, a plaintiff in Hopkins I, was a former City employee suing for past discrimination.  Because he did not receive a promotion or seniority points when the other plaintiffs settled with the City, the Union did not sue him in its state court law suit.  See Hopkins I (3:00-cv-309), Doc. 1 at ¶ 14 & Doc. 44 at 10; Hopkins II (3:07-cv-147), Doc. 64-16.

6

settlement agreement with the City, which had provided for a promotion and seniority points, "was later amended whereas I was promoted to captain without seniority points." Doc. 84-4 (Hopkins Affidavit) at ¶¶ 1, 8. Hopkins' affidavit does not say anything about a settlement of the Union case. Rohan later testified that he felt the Union's motion for summary judgment could best be undercut if the seniority points were off the table, thereby reducing the likelihood that the Hopkins I plaintiffs would also lose their promotions, which were at risk in the Union suit. See Doc. 72 (Rohan Deposition) at Tr. 96-101.

The Union's motion relied on United States v. City of Miami, 664 F.2d 435 (5th Cir. 1981) (see Doc. 114-2, Union motion and memorandum from state court litigation) and Luster recalled that Rohan feared that the seniority points were in jeopardy under the Miami case. See Doc. 69 (Luster Declaration). Luster further explained that he told Rohan that his clients would give up the seniority points if the trial court was prepared to rely on the Miami case (see id.), but Hopkins' January 29, 2003 affidavit, which Luster filed with the state court in opposition to the Union's summary judgment motion, refers to the loss of seniority points in the past tense, stating the original Hopkins I settlement agreement "was later amended" such that Hopkins was promoted "without seniority points." Doc. 84-4. Two months later, the Court denied the Union's summary judgment motion and the state court litigation continued.

Meanwhile, in October 2003, Hopkins sat for a District Chief promotion exam and scored 86.00 points. On November 19, 2003, the City released its rank ordered promotion eligibility list, showing that 9.506 seniority points were added to Hopkins' examination score, resulting in a total score of 95.506, and placing him at 24 out of 32 candidates who had

passed the exam.  Doc. 56-9 at 2-8.  The 9.506 seniority points that were added to his examination score included the in-grade seniority points originally awarded under Hopkins' settlement with the City in Hopkins I.

According to Archie Cullen with the City's Human Resources Division, on December 9, 2003, the City's Office of General Counsel forwarded to the HR Division a copy of the January 14, 2003 letter Luster sent to Rohan which stated that Hopkins and Jones agreed to give up their seniority points.  Id. at 3, 20.  Cullen states that his office was instructed at that time by the Office of General Counsel to recompute the total scores for Hopkins and Jones (who also took and passed the District Chief exam) to reflect their agreement to relinquish the Hopkins I seniority points.  Id. at 3.[6]  In that computation, Hopkins lost 3.58 points and his position on the list dropped to 28, as reflected on the City's amended rank order list issued on December 11, 2003.  Id. at 3, 25-26.  According to Hopkins, he received a document from the City noting the change.  Doc. 56-7 (Hopkins Deposition) at Tr. 25; see also Doc. 56-9 (December 2003 Candidate Score Report to Hopkins advising of his new score and rank); Doc. 131-1 (Hopkins' response to requests for admission, admitting that he was informed in December 2003 of removal of points and amendment to score).  Hopkins' rank on the list fell to 29 in May 2004 when Adrian Johnson, an African-American, returned from active military duty, took the exam, and scored higher.  Doc. 56-9 at 4.  Johnson was promoted to District Chief less than two weeks later.  Doc. 56-4.

---

[6]Cullen started handling JFRD HR records in August 2004 but pieced together this information from Hopkins' HR file.  See Doc. 73 (Cullen Deposition) at Tr. 14, 46-50.

The City continued to promote from the list until it expired as scheduled on November 19, 2005.  At that time, Hopkins was eighth in line for promotion.  Doc. 56-4 at 2-3, 47-48.[7] Thereafter, in February and March of 2006, the Union, the City, Hopkins, and the other defendants to the state court action were in the midst of attempting to settle that lawsuit.  On February 14, 2006, Luster sent a letter to Hopkins advising that he believed the agreement being proposed would leave intact the seniority points awarded in Hopkins I.  Doc. 64-23 at 1.  Thus, on February 28, 2006 Hopkins and Luster signed a document consenting to settlement and dismissal contingent on the City's approval of the settlement agreement.  Doc. 56-5 at 14.   The settlement agreement contained two potentially contradictory statements.  First, it stated that Hopkins I was settled by offering promotions to Hopkins and the others (omitting any language about the seniority points), yet it further stated that the Hopkins I settlement (which at least originally included seniority points) would remain intact and not be altered by the agreement.  Doc. 56-5 at 7, 14.  The agreement was filed with the City Council in March 2006 but was withdrawn before the City Council took action.  Doc. 56-4 at 9.

Meanwhile, in early April 2006, the City needed three additional District Chiefs and returned to the expired promotion eligibility list to select the candidates for provisional appointments who served for just short of three months until a new exam was administered and the results certified.  The provisional appointments followed rank order; thus neither

---

[7]Hopkins is listed in the ninth position but one person listed above him had retired by the time the list expired in November 2005 so Hopkins would have been eighth in line for promotion.  See Doc.  56-4 at 48; Doc. 114 at 6, n.3.

Hopkins nor the three people on the list ahead of him (all of whom were white) were selected for any of the three provisional appointments.  A new District Chief exam was administered on April 25, 2006.  Hopkins registered for the exam but he did not take it and was therefore ineligible for promotion when the new list was eventually certified in July 2006.[8]

In the meantime, between May 1 and May 16, 2006, Luster and counsel for the City exchanged a series of letters in which Luster demanded that the <u>Hopkins I</u> seniority points be returned to Hopkins and the City countered that they had been relinquished during the state litigation.  <u>See</u> Docs. 64-24, 64-25, 84-8, 84-9.  Before they were done, Hopkins had filed a charge of discrimination with the EEOC claiming he was discriminated against based on race and retaliation on November 18, 2005 when he was not promoted to District Chief. <u>See</u> Doc. 56-4 at 22.

By September 2006, the Union and the City had reached an agreement to resolve the state court suit and on October 3, 2006 the Mayor signed an ordinance passed by City Council awarding back pay and seniority points to certain Union members allegedly harmed by the <u>Hopkins I</u> settlement.  The Ordinance also states that the City's <u>Hopkins I</u> settlement with Hopkins and the other plaintiffs "shall remain intact and not be altered by this Settlement Agreement."   Doc. 56-5 at 23.   Hopkins never signed the consent form that was to accompany the agreement.  On November 2, 2006, Luster sent Hopkins a letter advising him that the Ordinance had passed and that the <u>Hopkins I</u> settlement was "intact and not altered" by the state court litigation.  Doc. 64-64. On March 1, 2007, the state court entered an Order

---

[8]Another District Chief exam was given in September 2009.  Hopkins registered for that exam too but did not take it.  Doc. 131-4.

dismissing the Union's suit against the City and the <u>Hopkins I</u> plaintiffs.  <u>See</u> Doc. 84-6 (state

court order of dismissal with prejudice).   Meanwhile, the EEOC had issued Hopkins a notice

of right to sue (Doc. 56-5 at 3-4) and four days after the dismissal of the state court lawsuit,

Hopkins filed this case in federal court.

## III.     Discussion

In his Second Amended Complaint, Hopkins brings claims of race discrimination and

retaliation under Title VII (Counts I and II), a § 1983 race discrimination claim (Count III), a

First Amendment retaliation claim (Count IV), and a breach of contract claim (Count V).

### A.     Breach of Contract (Count V)

Though listed last in the Second Amended Complaint, the alleged breach of contract

impacts the analysis of the other counts and the Court therefore addresses it first.  To prove

breach of contract under Florida law, Hopkins must establish there was "(1) a valid contract;

(2) a material breach; and (3) damages."  <u>Beck v. Lazard Freres & Co., LLC</u>, 175 F.3d 913,

914 (11th Cir. 1999) (applying Florida law).[9]  Hopkins claims the City breached their <u>Hopkins</u>

<u>I</u> settlement agreement by taking away the in-grade seniority points.  The City argues there

was no breach because Hopkins voluntarily gave up the points to avoid an adverse summary

judgment ruling in the state court case.

In support, the City points to: (1) Hopkins' affidavit filed in the state court suit in

opposition to the Union's motion for summary judgment in which he describes the

amendment to the settlement agreement as follows: "The settlement with the City of

_____

[9]The Court exercises supplemental jurisdiction over this claim pursuant to 28 U.S.C. §
1367.

Jacksonville provided that I would be promoted to captain with seniority points.  The settlement did not include costs and attorney's fees.  The settlement was later amended whereas I was promoted to captain without seniority points.  I have not utilized the seniority points in that I have not sat for a chief examination." (Doc. 84-4); (2) the letter from Luster to Rohan in which Luster said his clients authorized him to give up their seniority points (Doc. 69); (3) Hopkins' failure to object to Rohan's affidavit filed in the state court proceeding which attached Luster's letter and stated that under the amendment to the Hopkins I settlement, "[n]one of the [Hopkins I] plaintiffs will receive promotional seniority as a result of the settlement."  (Doc. 85-2); (4) Hopkins' failure to object when the City took the points away in December 2003; (5) Hopkins' admission that he knew in December 2003 that the points had been removed (Doc. 131-1); (6) Hopkins' testimony in an April 26, 2004 deposition in the Union's state court suit in which Hopkins testified that the agreement had been amended (Doc. 77 (Hopkins Deposition) at Tr. 38-57 (describing the earlier deposition, which is itself of record at Doc. 56-2)).

Hopkins, on the other hand, points to the following evidence in support of his contention that the original settlement agreement with the City did not change: (1) Hopkins agrees he was willing to give up the points to settle the state court suit but when the case did not settle for several years, it was not clear whether his offer was still on the table[10]; (2) he was never asked to sign an amended settlement agreement to memorialize the change;

---

[10]Hopkins' counsel's statement at oral argument that his state court affidavit was "a typographical error" (Doc. 138 at Tr. 26) conflicts with his explanation, which is essentially that he was willing to give up the seniority points to settle the Union's suit, but that it was not clear to him later whether the City was holding him to that agreement.

(3) when Hopkins' score for the District Chief's exam was released in November 2003, the

in-grade seniority points were added to his score on the rank order list (Doc. 64-20), and

there was no documentation to explain why the points were taken away a month later; (4)

the City Ordinance that embodies the terms of the state court settlement explicitly states that

the Hopkins I settlement "shall remain intact and not be altered by this Settlement

Agreement" (Doc. 64-17); (5) his own attorney advised him that he believed this language

meant the seniority points remained intact (Doc. 64-23) (Luster letter to Hopkins).[11]

While the evidence in support of the City's position is strong, the evidence to the

contrary is sufficient to create a disputed issue of material fact as to whether the parties

amended the Hopkins I settlement agreement.[12] If they did not amend the agreement, then

---

[11]The Court need not consider Hopkins' contention that the City had no authority to negotiate a state court settlement with the Union because to do so would violate the City's charter and/or his claim that the Union suit was void for lack of standing and/or on constitutional grounds. Hopkins was a defendant in that lawsuit and he was represented by counsel who could have raised any applicable defense to the claims or objections to the proceedings. Even if that were not the case, this lawsuit is not the appropriate venue to raise those arguments.

[12]At oral argument, the City's counsel seemed to concede that this issue presented a disputed issue of fact, but later contended that it did not preclude entry of summary judgment. See Doc. 138 at Tr. 13-14, 53. The Court disagrees. As the City's counsel herself noted, had the parties actually executed an amended settlement agreement, there would be no question as to what happened, but they did not. Id. at Tr. 10; see also, Doc. 72 (Rohan Deposition) at Tr. 109-11.
The City also argued that Hopkins is judicially estopped from contending in this case that the points had not been taken back when he filed an affidavit to the contrary with the state court. The application of judicial estoppel requires two factors: that the prior statements were made under oath (which is satisfied here), and that the inconsistency is "shown to have been calculated to make a mockery of the judicial system." Baloco v. Drummond Co., Inc., 767 F.3d 1229, 1245 (11th Cir. 2014) (quotation and citation omitted). Based on Hopkins' explanation of what he thought was happening at the time with the state proceedings, the Court cannot decide on summary judgment that he is judicially estopped

the City likely breached it by taking away the in-grade seniority points Hopkins would have otherwise had.[13]   The City's motion for summary judgment as to Count V is **denied**.

### B.   Title VII Race Discrimination (Count I)

Despite his various suggestions to the contrary, Hopkins' Count I claim of race discrimination is limited to failure to promote arising out of the 2003 District Chief exam.  The EEOC charge underlying this claim (and relied on in the complaint, see Doc. 22 at ¶ 61) complains of the City's failure to promote him to District Chief based on the 2003 exam.  See Stuart v. Jefferson County Dep't of Human Resources, 152 Fed. App'x 798, 801 (11th Cir. 2005) (holding court properly rejected claim of failure to promote that was not included in EEOC charge).   Although Hopkins' Second Amended Complaint alleges the City's discrimination is evidenced by "various acts and omissions," including, "without limitation," its failure to promote him following the 2003 exam (Doc. 22 at ¶ 64), he has not put forward any particular claim other than the failure to promote, and his factual allegations do not suggest any other.  See Doc. 22 at ¶¶ 1-59.  The Court rejects counsel's suggestion that a hostile work environment claim is in this case and "was tried by consent."  No such claim is

---

from claiming the City breached their settlement agreement.

[13]The Court does not have a complete understanding of the benefits carried with in-grade seniority points (beyond affecting rank on a promotion eligibility list) but presumes other employment benefits (such as pensions) may be affected and that a breach, therefore, would be material.  See, e.g., Doc. 64-16 (Union's state court complaint) at ¶ 9 (alleging that seniority affects eligibility for transfers); Doc. 56-5 at 22 (Attach. K, Ordinance memorializing settlement of Union suit) (awarding "pension contributions and benefits" so as to be in accord with award of pay and seniority).  See also, U.S. v. City of Hialeah , 140 F.3d 968, 981-82 (11th Cir. 1998) (describing myriad working conditions, such as awarding of overtime duty and special team assignments, as being affected by seniority points).

raised in Hopkins' complaint.  <u>See</u> Doc. 138 (hearing transcript) at Tr. 20.[14]

Further, to the extent Hopkins argues that an earlier version of his EEOC charge had

other claims in it that he intended to include in this lawsuit, that argument too is rejected.

Hopkins swore to the truth of the charge he filed on May 12, 2006.  <u>See</u> Doc. 56-4 at 22.

There is no basis to believe that the other draft in evidence was intended to be attached to

the back side of the filed charge, as Hopkins' counsel contended, as it includes much of the

same language that is included in the charge he filed (and some of the language from the

front page of the unfiled charge).  <u>See</u> Doc. 64-54 (unfiled charge); Doc. 138 (transcript of

oral argument) at Tr. 50.  Hopkins explains that EEOC personnel told him his claim was too

long, yet the form expressly permits the filing of additional pages.  Further, as with the EEOC

charge Hopkins did file, the unfiled charge states that the alleged discrimination started and

ended on November 18, 2005 (which is when the promotion eligibility list expired without

Hopkins having been promoted).

──────────────────

[14]Admittedly, Hopkins' amended declaration (Doc. 89) paints a disturbing picture of the racially charged environment Hopkins has endured as a firefighter for more than two decades.  However, the cases upon which Hopkins' counsel relies do not support the proposition that a claim not included in a complaint can be "tried by consent" where there has been no trial and where the City has not consented to any such thing.  <u>See</u> <u>Gupta v. E. Tex. State Univ.</u>, 654 F.2d 411, 413-15 (5th Cir. Unit A Aug. 1981) (holding that a district court has ancillary jurisdiction to hear a retaliation claim contained within a complaint if the claim grows out of earlier EEOC charge); <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114-18 (2002) (holding that while incidents of discrimination and retaliation are each discretely actionable, hostile work environment incidents may accrue over time and be actionable as a group of incidents joined in a single claim).  Neither of those cases say that a plaintiff may litigate a claim not included in his complaint or his EEOC charge without consent from the other side and when there has been no trial.  <u>See</u> <u>Blue Cross and Blue Shield of Ala. v. Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990) (holding that Fed.R.Civ.P 15(b) is inapplicable where case is decided at summary judgment and not at trial).

Additionally, Hopkins had filed a federal lawsuit based on an EEOC charge in the past so was not a stranger to the process. See Hopkins I, Doc. 1. And, while Hopkins was apparently representing himself in his initial dealings with the EEOC (though Luster was still representing him in other affairs at the time and Juanita Powell, a lawyer sharing Luster's address, responded to the EEOC investigator and received a copy from the EEOC of Hopkins' right to sue letter, see Docs. 64-26, 64-41), by the time Hopkins filed his lawsuit, he had a lawyer and had fair opportunity to file a new charge or to seek a stay while amending his charge with the EEOC if he did not believe the charge to which he swore was accurate. He did neither. See Duble v. FedEx Ground Package System, Inc., 572 Fed. App'x 889, 892 (11th Cir. 2014) (explaining that purpose of Title VII exhaustion is to allow EEOC first opportunity to investigate alleged practices and perform its role of promoting conciliation; thus, a judicial complaint is limited by the scope of the EEOC investigation reasonably expected to grow out of the charge) (citing Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004)).[15] Therefore, Hopkins' Count I claim of Title VII race discrimination is limited to failure to promote arising out of the 2003 District Chief exam.

Under Title VII, no employer may fire or otherwise discriminate against an employee because of the employee's race. 42 U.S.C. § 2000e-2(a)(1). To succeed on a discrimination claim based on circumstantial evidence,[16] a plaintiff generally must make it through the three

---

[15]Hopkins' reliance on Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008) for support is misplaced. That case explains that the EEOC may consider other documents in lieu of formal charges. Id. at 402. It does not say that other documents never processed by the EEOC can form the basis of a later lawsuit.

[16]Hopkins agrees his claims are based on circumstantial evidence. See Doc. 120 at 22.

steps of the McDonnell Douglas burden-shifting framework. Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 (11th Cir. 2011).[17]  In the context of a failure to promote claim, the first step requires a plaintiff to establish a prima facie case of discrimination "by showing that: (1) [he] is a member of a protected class; (2) [he] was qualified and applied for the promotion; (3) [he] was rejected despite [his] qualifications; and (4) other equally or less qualified individuals who were not members of the protected class were promoted."[18] Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004); see also, Turner v. City of Auburn, 361 Fed. App'x 62, 64 (11th Cir. 2010) (citing Wilson for standard in a firefighter race discrimination failure to promote case).

The City agrees plaintiff is a member of a protected class but contends he fails to meet any of the other requirements necessary to establish a Title VII violation because, given his rank on the promotion eligibility list, he did not qualify for promotion, and therefore cannot demonstrate that he was rejected for promotion despite his qualifications.  Hopkins argues the City took away the seniority points for the purpose of denying him the opportunity to be promoted while, at the same time in the Williams case (another federal discrimination lawsuit), white firefighters received back pay and points.

---

[17]A plaintiff can alternatively survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Smith, 644 F.3d at 1328.

[18]If a plaintiff establishes a prima facie case, the second step of the McDonnell Douglas framework shifts the burden to the employer to rebut the presumption of discrimination by presenting a legitimate, non-discriminatory reason for its action. Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).  If successful, the burden then shifts back to the plaintiff to show that the stated reason is a mere pretext for discrimination. Id.

First, the City litigated <u>against</u> the <u>Williams</u> plaintiffs and only awarded them back pay and seniority points when required to do so because the City lost at trial (and on appeal). <u>See</u> <u>Williams v. City of Jacksonville</u>, Case No. 3:00-cv-469-J32TEM, Doc. 309 (Judgment) (May 15, 2006).  Second, although the City initially included the points in Hopkins' score when the rankings were released in November 2003 (when Hopkins was 24th on the promotion eligibility list), it promptly adjusted the score to reflect the removal of the points just three weeks later, in December of 2003.  There is no evidence to support a suggestion that, in doing so, the City calculated that, two and a half years later, Hopkins would be eligible for a three month provisional promotion and that it should therefore take away seniority points to deprive him of that future opportunity.  Archie Cullen explained the circumstances under which the points were removed from Hopkins' score in December 2003 to account for the settlement of the state lawsuit (<u>see</u> Doc. 56-9) and, while the City perhaps should have handled the matter differently, Hopkins has no evidence that the City acted in December 2003 to prevent his provisional promotion two and a half years later.[19]  The three people promoted to the temporary provisional chief positions were ahead of Hopkins on the promotion eligibility list.  Doc. 56-4.

Hopkins' counsel's statement at oral argument that the City "didn't remove [the points] until he scored highly enough to be promoted off the list" (Doc. 138 at Tr. 27) is contrary to

[19]   As noted, <u>supra</u>, footnote 3, the Court rejects Hopkins' suggestion that the insertion of returning veteran Adrian Johnson required the City to restart the two year clock on the list. The eligibility list was amended on May 3, 2004 to include Johnson and stated that it expired on November 19, 2005 (the original expiration date).  <u>See</u> Doc. 64-21.  There is no evidence that anyone objected when the list was released or at anytime before the list expired.

all the evidence.  The points were removed on December 11, 2003, less than a month after

the original list was generated at a time when Hopkins was 24th in line for promotion.

Hopkins himself admits he was advised in December of 2003 that the points had been

removed.  Doc. 131-1.  Hopkins did not complain about the removal of the points in his

EEOC charge (nor in his unfiled draft).  Counsel's further statement that he would have been

promoted to District Chief if the points had not been removed (Doc. 138 at Tr. 33) is also

inaccurate.  Even if the in-grade seniority points remained, Hopkins would have been entitled

to only a provisional promotion that would have expired within three months because a new

list (for an exam Hopkins registered for but did not take) resulted in permanent promotions

for those then eligible.  In short, while the City may have breached its settlement agreement

in Hopkins I by removing the points (a matter a jury will decide), there is no evidence that any

decision to do so was racially motivated or calculated to deprive him of a short term future

opportunity no one knew he might have.   Thus, Hopkins cannot establish that he was

qualified for promotion and thus cannot show that he was rejected for promotion despite

being qualified as required to meet his prima facie case for racial discrimination.[20]

Hopkins also contends that the City had a demonstrated need for six additional

District Chief positions which could have been filled before the promotion eligibility list

expired in November 2005.  But Hopkins was eighth on the list at the time it expired so still

[20]Even if the Court determined Hopkins had established his prima facie case, Hopkins
cannot show that the City's reason for not promoting him (his position on the eligibility list)
was pretext.  See Alvarez, 610 F.3d at 1265 ("To show pretext, [a plaintiff] must demonstrate
such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a reasonable factfinder could find
them unworthy of credence.") (internal quotation and citation omitted).

would not have been eligible for promotion and Hopkins has produced no evidence that the City's decision not to create the positions had anything to do with Hopkins' placement on the list.  Daniel Kleman (the City's decision maker at the time) explained that he opposed the proposal (which was to convert safety officers to District Chiefs) as compromising safety and being too costly (Doc. 56-4 at 5-7), "reason[s] [which] might motivate a reasonable employer." Alvarez, 610 F.3d at 1266.  Thus, even if the creation of six positions would have resulted in Hopkins receiving a short term provisional promotion, he cannot show the City's reason for not creating the positions is pretext for discrimination by "simply quarreling with the wisdom of that reason." Id.  The City's motion for summary judgment as to Count I is **granted**.

### C.    Title VII Retaliation (Count II)

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in a statutorily protected activity (opposing discrimination or participating in a discrimination-related proceeding); (2) he suffered a materially adverse employment action; (3) the protected activity and adverse action were causally connected. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012); 42 U.S.C. § 2000e-3(a).  Once the plaintiff establishes these elements, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse action. Goldsmtih v. Bagby Elevator Co., Inc, 513 F.3d 1261, 1277 (11th Cir. 2008).  If the employer succeeds in this task, the plaintiff then must prove that the reason provided is a mere pretext for prohibited retaliatory conduct. Id.  See also, Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, [thus

20

requiring] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").

Hopkins' Title VII retaliation claim is limited to the scope of his EEOC charge and actions that "grow out of" the protected activity.  Gregory, 355 F.3d at 1280.  In his charge, Hopkins states that the City denied him a promotion in retaliation for his filing a complaint in 1992.  The City says there is no evidence of a 1992 complaint.[21]  However, even assuming Hopkins engaged in protected activity during the relevant time, as explained above, the reason Hopkins was not promoted is that he was eighth on the promotion eligibility list at the time it expired and the City's decision not to create additional positions before the list expired is not actionable.  Even assuming Hopkins' various other claims of retaliation were within or grew out of his EEOC charge,[22] Hopkins testified that he received no formal discipline (Doc. 77 (Hopkins Deposition) at Tr. 94-95), there is no evidence he lost pay or benefits, and the City explained its actions with regard to Hopkins' other claims by providing unrebutted

_____

[21]Hopkins' responsive brief does not address this.  Even if there was a 1992 complaint, it would be too remote in time from the allegedly adverse employment action to establish causation.  See, e.g., Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001); Faircloth v. Herkel Investments, Inc., 514 Fed. App'x 848, 852 (11th Cir. 2013).

[22]In his Second Amended Complaint, Hopkins alleges he was retaliated against in terms of unwarranted discipline, manipulation of his test scores, assignments, denials of promotion, and failure to promote when the City had a clear need for additional positions.  Doc. 22 at ¶¶ 56, 66. In his amended declaration, Hopkins also stated that the City failed to follow overtime protocols, but he has not supported this claim with any evidence, has not demonstrated that it caused a serious and material change in the terms, conditions, or privileges of his employment, and has not alleged that the failure was retaliation for any protected activity.  And, such occasions were likely outside the scope of his complaint as he stated they occurred "recently."  See Doc. 89 (Hopkins January 16, 2009 Declaration) at ¶¶152-56.

"reason[s] [which] might motivate a reasonable employer." <u>Alvarez</u>, 610 F.3d at 1266.  <u>See</u> Doc. 131-3 (Drysdale Affidavit) (explaining City policy with regard to job assignments and station operations); Doc. 56-4 (Kleman Declaration) (explaining City action in response to HRC recommendations); Doc. 115-1 (Senterfitt Affidavit) (describing staffing of safety cars); Doc. 131-2 (Wilson Affidavit) (describing station house layouts and opening).  Thus, Hopkins cannot show that he suffered a materially adverse employment action.  Even if he had, he cannot show that the City's reasons for taking the actions it did were a pretext for retaliation. The City's motion for summary judgment is **granted** as to Count II.

**D.      Race Discrimination under the Equal Protection Act (under § 1983) (Count III)**

Title VII and § 1983 require the same elements to establish a claim of race discrimination.  <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008).   However, unlike his Title VII claim, Hopkins' § 1983 claim of race discrimination is not limited by his EEOC charge.  Rather, a claim under § 1983 is limited by Florida's four-year statute of limitations. <u>See, e.g.,</u> <u>McNair v. Allen</u>, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."); <u>City of Hialeah, Fla. v. Rojas</u>, 311 F.3d 1096, 1103 (11th Cir. 2002) ("Plaintiffs must bring a section 1983 claim arising in Florida within four years of the alleged unlawful discriminatory practice"); Fl. St. § 95.11(3).

Hopkins first raised his § 1983 race discrimination claim in his Second Amended Complaint, filed on December 19, 2007, so this claim is limited to adverse employment

actions occurring on or after December 19, 2003.[23] Hopkins' claim alleges discrimination by

failing to promote him, failing to create new positions before the eligibility list expired and,

incorporating the earlier allegations, by "discipline, manipulation of his test scores, and other

aspects of his employment."  Doc. 22 at ¶¶ 56, 67, 68.  As explained above, Hopkins was

eighth in line for promotion when the District Chief eligibility list expired and the City's choice

not to create additional positions before the list expired is not actionable.  As to his other

claims of discriminatory conduct, Hopkins claims he was not subject to formal discipline but

perceived some action as informal discipline.  See Doc. 77 (Hopkins Deposition) at Tr. 94-

95.  However, as those actions did not cause "a serious and material change to the terms,

conditions or privileges of employment," they are not actionable.[24]  Crawford, 529 F.3d at

970-71.  The City's motion for summary judgment is **granted** as to Count III.

> **E.      Retaliation under the First Amendment (under § 1983) (Count IV)**

While a public employee may not be made to suffer an adverse employment action

for speech protected by the First Amendment, "a public employee's right to freedom of

speech is not absolute."  Leslie v. Hancock County Bd. of Educ., 720 F.3d 1338, 1346 (11th

---

[23]Because of the four year statute of limitations, if the cause of action accrued at the time the points were removed on December 11, 2003, Hopkins would be too late (and he has not contested the City's position that this claim does not relate back to the date of filing his original complaint).  However, it appears more likely that the cause of action accrued in November 2005 when the list expired without Hopkins having been promoted.  If that is so, his claim is not barred by the statute of limitations but, for the reasons explained above, the City is still entitled to judgment on this claim.

[24]Again, the Court finds the description of Hopkins' career with JFRD as presented in his amended declaration (Doc. 89) to be disconcerting but not actionable given the complaint before the Court.

Cir. 2013) (quoting Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007)).  To establish his

First Amendment retaliation claim, Hopkins must show (1) he "was speaking as a citizen on

a matter of public concern; (2) [his] interests as a citizen outweighed the interests of the

[City] as an employer; and (3) the speech played a substantial or motivating role in the

adverse employment action."  Id. (quoting Vila, 484 F.3d at 1339).  If Hopkins were able to

establish these elements, "the burden [would then] shift[ ] to the [City] to prove it would have

made the same adverse employment decision absent [Hopkins'] speech."  Id. (quoting Vila,

484 F.3d at 1339).  Florida's four-year statute of limitations applies to this claim.  Rojas, 311

F.3d at 1103.  Thus, only adverse employment actions occurring on or after December 19,

2003 are actionable.[25]

In this count, Hopkins incorporates by reference all 59 paragraphs of the earlier

factual allegations, but does not identify any particular speech that he claims is protected and

that caused the City to retaliate.  See Doc. 22 (Second Amended Complaint) at ¶¶ 69-70.

In responding to the City's motion, Hopkins contends that "he has long spoken out against

race discrimination against himself and others, [which is] per se protected activity and

speech."  Doc. 120 at 38.  While this broad brush statement may be true, it is insufficient to

support Hopkins' claim of First Amendment retaliation.  Although Hopkins further states that

"[l]awsuits, internal complaints, and charges", id., are protected speech, he has not identified

any particular time at which he spoke as a citizen on a matter of public interest.

---

[25]Hopkins' original and first amended complaint did not include a First Amendment
retaliation claim.  Hopkins has not contested the City's position that this claim does not relate
back either.

"[C]onclusory allegations without specific supporting facts have no probative value" and are insufficient to withstand a motion for summary judgment. <u>Leigh v. Warner Bros., Inc.</u>, 212 F.3d 1210, 1217 (11th Cir. 2000).

Even if the Court were to assume that Hopkins spoke as a citizen on a matter of public interest, Hopkins has failed to establish any adverse employment action that occurred in response during the relevant time frame.  In the context of a First Amendment retaliation claim, an adverse employment action is one that "would likely chill the exercise of constitutionally protected speech." <u>Akins v. Fulton Cnty.</u>, 420 F.3d 1293, 1300 (11th Cir. 2005).  The action must "involve an important condition of employment" such as "salary, title, position, or job duties." <u>Id.</u>

Hopkins' position on the District Chief eligibility list precluded him from obtaining a promotion and foreclosed a provisional promotion during the brief period after the list expired.[26]  The other conduct of which Hopkins complains in his declarations and deposition (<u>see</u> Docs. 65, 77, 89, 121) was either promptly addressed by the City, or is not tied to any protected statement, or is not sufficiently related to an "important condition of employment" as to be actionable.  <u>See</u> <u>Akins</u>, 420 F.3d at 1301-02.  The City's motion for summary judgment on the First Amendment retaliation claim (Count IV) is **granted**.

_____

[26]Although the points were removed from Hopkins' score earlier than the statutorily relevant time period, even if that conduct is considered, as noted above, there is no evidence to suggest the City removed the points to prevent a possible three month provisional promotion two and a half years down the road.

**IV.     Conclusion**

Accordingly, it is hereby

**ORDERED**:

The City's Motion for Summary Judgment (Doc. 114) is **granted** as to Counts I, II, III and IV and **denied** as to Count V of the Second Amended Complaint.  At oral argument, the City suggested that a favorable outcome for Hopkins at trial on Count V would likely result in the need for a fairness hearing because, while the claim for breach would be tried to a jury, the in-grade seniority points were awarded as part of a settlement which could entitle certain Union members to a fairness hearing.  At this juncture, the Court takes no position on that matter.  However, in light of the uncertainty as to how this will all play out, the Court encourages the parties to find an alternative way to resolve this short of further litigation and will direct the parties to attend a settlement conference with Judge Schlesinger. The parties shall contact Judge Schlesinger's chambers to make the arrangements.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of November, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

Honorable Harvey E. Schlesinger
Senior United States District Judge

counsel of record